UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
FRANK PALOMPELLI,

                        Plaintiff,

  - against -                                **OPINION & ORDER**

JILIAN SMITH, M.D., FREDERICK             No. 20-CV-8070 (CS)
BERNSTEIN, M.D., CARL J. KOENIGSMANN,
M.D., and GREEN HAVEN C.F. MEDICAL
DEPT.,

                        Defendants.
-------------------------------------------------------------x

Appearances:

Frank J. Palompelli
Coxsackie, New York
*Pro Se Plaintiff*

Gee Won Cha
Assistant Attorney General
Office of the Attorney General of the State of New York
New York, New York
*Counsel for Defendants Bernstein and Koenigsmann*

Seibel, J.

      Before the Court is the motion to dismiss of Defendants Frederick Bernstein and Carl J.

Koenigsmann. (ECF No. 26.)[1]  For the following reasons, the motion is GRANTED.

**I.    BACKGROUND**

      I accept as true the facts, but not the conclusions, set forth in Plaintiff's Amended

Complaint, ("AC"), Initial Complaint, (ECF No. 2 ("IC")), and opposition submission, (ECF No.

---

[1] The Amended Complaint, (ECF No. 24 ("AC")), spells Defendant Koenigsmann's name as "Koenigsman."  The Court uses Defendant's spelling.  (*See* ECF No. 27 ("Ds' Mem.") at 1.)

33 ("P's Opp.")). *See Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2015 WL 408941, at *1 n.1 (S.D.N.Y. Jan. 30, 2015) (court may give *pro se* plaintiff the benefit of considering facts in original complaint even if they have not been repeated in amended complaint); *Braxton v. Nichols*, No. 08-CV-8568, 2010 WL 1010001, at *1 (S.D.N.Y. Mar. 18, 2010) ("[A]llegations made in a *pro se* plaintiff's memorandum of law, where they are consistent with those in the complaint, may also be considered on a motion to dismiss.").[2]

### A.     **Factual Background**

Plaintiff is incarcerated at Green Haven Correctional Facility. During his time there, over a period of years, he has complained of headaches with dizziness. (AC at 4; *see* IC ¶ 2.)[3] He complained of his symptoms numerous times to Defendants Smith[4] and Bernstein, who are, respectively, a nurse practitioner and doctor at the facility. (IC ¶ 5; *see* AC at 3-4.) Plaintiff alleges that Defendant Smith "would not take [his] concern(s) seriously," and only gave him over-the-counter Tylenol, and that Defendant Bernstein did "not send [him] out for testing to gain preventative healthcare." (AC at 4.) He did not receive "any further testing or treatment." (*Id.*) Plaintiff alleges that facility staff has threatened disciplinary actions for his repeated requests for attention. (P's Opp. at 1; *see* AC at 4.)

---

[2] The Court will send Plaintiff copies of all unpublished decisions cited in this Opinion and Order.

[3] The IC states that Plaintiff suffered headaches for "at least a year," (IC ¶ 5), and "nearly one year and a half," (*id.* ¶ 6). In the AC he describes "continuo[u]s ongoing headaches with dizziness." (AC at 4.) In his opposition he says he complained of "continuous *ongoing headaches* with dizziness" for "approximately Five (5) years." (P's Opp. at 2.) (emphasis in original).

[4] Defendant Smith has not been served in this action. (ECF No. 17.) According to counsel for Defendants Bernstein and Koenigsmann, "there is no nurse [or] doctor by this name employed by or contracted with the New York State Department of Corrections and Community Supervision." (Ds' Mem. at 2 n.2.)

On November 9, 2018, Plaintiff complained to a non-defendant correction officer about feeling dizzy and nauseous "with [an] intense headache." (IC ¶ 2.) He does not recall what happened after that, but he was told that the next day, he fell and hit his head, which led "to a head injury that caused internal bleeding" and a stroke. (*Id.* ¶ 4.) He was hospitalized and received adequate care after the stroke. (IC ¶¶ 3-4; P's Opp. at 2.) A CAT scan showed a "fracture in [his] frontal lobe," (AC at 5), and his discharge diagnosis was "[i]ntraparenchymal [h]ematoma of the [b]rain; [v]asogenic [e]dema," (IC ¶ 4). Plaintiff left the hospital on November 11, 2018. (*Id.* ¶ 3.) As a result of the stroke, Plaintiff now "suffer[s] from short term memory loss, hypertension, headaches, weakness in [his] legs when [he] stand[s], numbness in [his] extremities, and extreme anxiety." (AC at 4.) He alleges that had he been provided "with adequate medical treatment, the injury and stroke could have been prevented." (IC ¶ 5.)

### B. Procedural History

On September 29, 2020, Plaintiff filed a complaint in this court, alleging that Defendants Smith, Bernstein, Koenigsmann, and the Green Haven C.F. Medical Department treated him with deliberate indifference to a safety and health risk that constitutes cruel and unusual punishment in violation of the Eighth Amendment. (*Id.* ¶ 6.) On November 16, 2020, this court dismissed the claim against the Green Haven C.F. Medical Department. (ECF No. 9.)[5]

On February 16, 2021, Defendants Bernstein and Koenigsmann filed a pre-motion letter in anticipation of their motion to dismiss, (ECF No. 19), and on March 23, 2021, at a pre-motion conference, I granted Plaintiff leave to amend the Complaint by April 30, 2021, (*see* Minute Entry dated Mar. 23, 2021). After that date came and went, and in response to a May 22, 2021

---

[5] Plaintiff still lists "Green Haven C.F. Medical Dept." as a Defendant in the AC's caption but does not list it as a Defendant under "Defendant Information." (AC at 1, 3.)

3

order, (ECF No. 22), Plaintiff filed the Amended Complaint on June 3, 2021, (ECF No. 24). The instant motion followed. (ECF No. 26.) Plaintiff missed the deadline to oppose, apparently because he had been moved but did not update the Court or Defendants as to his address. (ECF No. 29.) The Court extended his time to oppose but he missed that deadline as well. (ECF Nos. 29, 32.) He finally opposed, (P's Opp.), and Defendants replied, (ECF No. 34).

## II. LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). While Federal Rule of Civil Procedure 8 "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth," and then determines whether the remaining well-pleaded factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to relief.'" *Id.* (cleaned up) (quoting Fed. R. Civ. P. 8(a)(2)).

### B.     *Pro Se* Plaintiffs

Submissions by *pro se* plaintiffs are to be examined with "special solicitude," *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010), interpreted "to raise the strongest arguments that they suggest," *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), and "held to less stringent standards than formal pleadings drafted by lawyers," *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (*per curiam*) (cleaned up). Nevertheless, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," and district courts "cannot invent factual allegations" that the plaintiff has not pleaded. *Chavis v. Chappius*, 618 F.3d 162, 170 (2d Cir. 2010) (cleaned up).

## III.    DISCUSSION

### A.     Personal Involvement

"It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (cleaned up). While *Colon* laid out a special test for supervisory liability outlining five ways a plaintiff could show personal involvement of a supervisor, the Second Circuit recently clarified that under the Supreme Court's ruling in *Iqbal*, the *Colon* test is invalid and "a plaintiff must plead and prove 'that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'"

5

*Tangreti v. Bachmann*, 983 F.3d 609, 618 (2d Cir. 2020) (quoting *Iqbal*, 556 U.S. at 676). "Simply put, there's no special rule of liability for supervisors." *Id.* While "'[t]he factors necessary to establish a [§ 1983] violation will vary with the constitutional provision at issue' because the elements of different constitutional violations vary," *id.* (quoting *Iqbal*, 556 U.S. at 676) (second alteration in original), "[t]he violation must be established against the supervisory official *directly*," *id.* (emphasis added).

Plaintiff has not pleaded enough facts for me to conclude that Defendant Koenigsmann, who is the chief medical officer for the New York State Department of Corrections and Community Supervision ("DOCCS"), (IC at 1), was personally involved in any constitutional violations. Indeed, in the AC Plaintiff does not mention Defendant Koenigsmann anywhere outside the case caption. *See Boykin v. Moreno*, No. 17-CV-6869, 2020 WL 882195, at *3 (S.D.N.Y. Feb. 24, 2020); *King v. Falco*, No. 16-CV-6315, 2018 WL 6510809, at *7 (S.D.N.Y. Dec. 11, 2018). In his opposition papers, Plaintiff states that Koenigsmann "is [in] charge overall" and is thus liable for Smith's and Bernstein's "negligent practices." (P's Opp. at 3.) This statement indicates clearly that Koenigsmann is being sued merely based on his supervisory position, which even before *Tangreti* would not suffice to show personal involvement for purposes of § 1983. *See, e.g.*, *Banks v. Annucci*, 48 F. Supp. 3d 394, 416 (N.D.N.Y. 2004) ("Where a defendant is a supervisory official, a mere linkage to the unlawful conduct through the chain of command (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.") (cleaned up). Plaintiff's submissions are devoid of any facts suggesting that Koenigsmann was involved in, or even aware of, Plaintiff's medical care.

Accordingly, the claim against Koenigsmann is dismissed.

B. **Deliberate Indifference to Medical Needs – Bernstein**

Next I address whether Plaintiff has adequately stated a claim for deliberate indifference to his medical needs. The Eighth Amendment imposes a duty on prison officials to ensure that inmates receive adequate medical care. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "Yet not every lapse in medical care is a constitutional wrong. Rather, a prison official violates the Eighth Amendment only when two requirements" – one objective and one subjective – "are met." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006) (cleaned up).

The objective element requires that "the alleged deprivation of adequate medical care. . . be sufficiently serious." *Id.* (cleaned up). Under this element of the test, I must determine (a) "whether the prisoner was actually deprived of adequate medical care" and (b) if so, "whether the inadequacy in medical care is sufficiently serious." *Id.* at 279-80. Prison officials are required to provide "reasonable care." *Id.* at 279 (*citing Farmer*, 511 U.S. at 844-47). "Because prison officials' duty is only to provide reasonable care, prison officials are liable only if they fail to take reasonable measures in response to a medical condition." *Rutherford v. Correct Care Sols., LLC*, No. 18-CV-12049, 2020 WL 550701, at *5 (S.D.N.Y. Feb. 4, 2020) (cleaned up).

The subjective component requires a plaintiff to plausibly allege that the official acted with deliberate indifference to the inmate's health. *Salahuddin*, 467 F.3d at 280. "This mental state requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." *Id.* "The defendant's belief that his conduct poses no risk of serious harm (or an insubstantial risk of serious harm) need not be sound so long as it is sincere." *Id.* at 281.

"[N]egligence, even if it constitutes medical malpractice, does not, without more, engender a constitutional claim." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

7

Deliberate indifference is more than an "inadvertent failure to provide adequate medical care." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). While deliberate indifference is not established merely because a provider concludes "no 'medical treatment' [is] necessary," *Jordan v. Fischer*, 773 F. Supp. 2d 255, 276-77 (N.D.N.Y. 2011), the personnel in question must actually evaluate the patient's condition and make a determination, *see Smith v. Outlaw*, No. 15-CV-9961, 2017 WL 4417699, at *4 (S.D.N.Y. Sept. 30, 2017) (plaintiff who alleged he complained of chest pains and was sent back to his cell without examination or treatment before having a heart attack had pleaded deliberate indifference); *Gilliam v. Hamula*, No. 06-CV-6351, 2011 WL 6148943, at *16 (W.D.N.Y. Dec. 12, 2011) (alleged refusal to examine Plaintiff could support finding of deliberate indifference); *cf. Powell v. Cusimano*, 326 F. Supp. 2d 322, 338-39 (D. Conn. 2004) (plaintiff was not denied medical care because evidence clearly showed he was in fact examined by a nurse).

### 1. The Objective Prong

The objective element "contemplates a condition of urgency that may result in degeneration or extreme pain." *Chance*, 143 F.3d at 702 (cleaned up). "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Id.* (cleaned up). Here, Plaintiff complains of "continuo[u]s, ongoing headaches with dizziness." (AC at 4.) Plaintiff fails to meet the objective prong because "not all headaches – even very bad ones – are serious enough to give rise to an Eighth Amendment violation." *Armand v. Simonson*, No. 12-CV-7709, 2016 WL 1257972, at *14 (S.D.N.Y. Mar. 30, 2016); *see Watts v. N.Y.C. Police Dep't.*, 100 F. Supp. 3d. 314, 328 (S.D.N.Y. 2015) ("Courts in this district

have held that terrible and extreme headaches and swelling do not satisfy the objective component of the deliberate indifference inquiry.") (cleaned up); *Qader v. New York*, 396 F. Supp. 2d 466, 470 (S.D.N.Y. 2005) ("[P]laintiff's dizziness and 'terrible headache' do not satisfy the objective component . . . ."). *But see Moriarty v. Neubould*, No. 02-CV-1662, 2004 WL 288807, at *2 n.2 (D. Conn. Feb. 10, 2004) (migraine headaches can be a sufficiently serious condition if they are "extremely painful and debilitating"). Plaintiff does not claim to have had unusually debilitating headaches, nor does he provide facts that would have put his providers on notice that the headaches were a precursor to a stroke.[6] He has thus failed to allege facts plausibly meeting the objective prong.

### 2. The Subjective Prong

Even if Plaintiff had met the objective prong, he fails to meet the subjective prong. Plaintiff alleges that Defendant Bernstein, as the facility doctor, did "not send [him] out for testing to gain preventative healthcare which ultimately" led to him "suffering [from] a stroke." (AC at 4.) Plaintiff provides no facts showing that Bernstein should have known that someone who had repeated headaches would then have a stroke, and indeed, that years went by with no such event makes any such conclusion even more remote. But even if Bernstein should have known, that would amount, at most, to negligence or medical malpractice, and "[h]arm to a prisoner caused by accident, negligence or medical malpractice do not alone constitute the necessary deliberate indifference." *Hogan v. Russ*, 890 F. Supp. 146, 149 (N.D.N.Y. 1995). To state an Eighth Amendment claim, Plaintiff would have to provide facts plausibly suggesting that

---

[6] Indeed, his allegation that treatment of the headaches would have prevented his fall and stroke is entirely conclusory. He presents no facts about what was causing the headaches, what caused the fall and stroke, whether there was any relationship between the headaches and the fall/stroke, what proper treatment of the headaches would have been, or how such treatment would have prevented the latter events.

Bernstein drew the inference that the headaches were a precursor to a more serious condition, and just did not care.  This he fails to do.

Plaintiff also alleges that the only medication he received for his chronic headaches was over-the-counter Tylenol and that no one conducted "any further testing or treatment."  (AC at 4.)  This claim amounts to a disagreement over the proper course of treatment, which does not give rise to a constitutional violation.  *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim.").  It is well settled that

> disagreements over medications, diagnostic techniques (e.g., the need for X-rays), forms of treatment, or the need for specialists or the timing of their intervention, are not adequate grounds for a Section 1983 claim.  These issues implicate medical judgments and, at worst, negligence amounting to medical malpractice, but not the Eighth Amendment.

*Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 312 (S.D.N.Y. 2001); *see Hill v. Curcione*, 657 F.3d 116, 123 (2d Cir. 2011); *Rutherford*, 2020 WL 550701, at *6.  Accordingly, complaints alleging disagreement with the course of treatment, like this one, are routinely dismissed in this Circuit, at least where some medical assessment is done.  *See, e.g.*, *Jacks v. Annucci*, No. 18-CV-3291, 2019 WL 3239256, at *4 (S.D.N.Y. July 18, 2019) (collecting cases); *Washington v. Westchester Cnty. Dep't of Corr.*, No. 13-CV-5322, 2014 WL 1778410, at *6 (S.D.N.Y. Apr. 25, 2014) ("[I]t is well-settled that the ultimate decision of whether or not to administer a treatment or medication is a medical judgment that, without more, does not amount to deliberate indifference.").

Accordingly, Plaintiff's Eighth Amendment claim against Bernstein for deliberate indifference to medical needs is dismissed.[7] The Court sympathizes with Plaintiff's suffering, but his medical care does not rise to the level of a constitutional violation.

### C. The Unserved Defendant

Pursuant to Federal Rule of Civil Procedure 4(m),

> [i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time. But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

Fed. R. Civ. P. 4(m). "Good cause is generally limited to exceptional circumstances where the plaintiff's failure to serve process in a timely manner was the result of circumstances beyond [his] control." *Rutherford v. Fla. Union Free Sch. Dist.*, No. 16-CV-9778, 2019 WL 1437823, at *20 (S.D.N.Y. Mar. 29, 2019) (cleaned up). "In determining whether a plaintiff has shown good cause, courts weigh the plaintiff's reasonable efforts and diligence against the prejudice to the defendant resulting from the delay." *Id.* (cleaned up).

The U.S. Marshals Service was unable to serve Defendant Smith at Green Haven, having been informed that she was not employed by DOCCS. (ECF No. 17.) During the pre-motion conference on March 23, 2021, Plaintiff received notice of this failure of service, following which Defendants investigated whether Defendant Smith worked at Green Haven as an employed or contracted nurse. Defendants stated in their papers that "[w]e are informed that

---

[7] As I do not find that Plaintiff has plausibly pleaded that Defendants displayed deliberate indifference to his medical needs, I need not address Defendants' argument that they are entitled to dismissal on qualified immunity grounds.

11

there is no nurse [or] doctor by this name employed by or contracted with the New York State Department of Corrections and Community Supervision."  (Ds' Mem. at 2 n.2.)

More than ninety days have elapsed since the Complaint was filed, and Plaintiff – who had notice of the ineffective service – has failed to identify another address for Defendant Smith.  Ordinarily, I would direct that the action be dismissed against Defendant Smith without prejudice unless Plaintiff, within thirty days, either (1) files proof of service with the Clerk of the Court, or (2) shows cause in writing why a further extension of the time limit for service is warranted.  *See* Fed. R. Civ. P. 4(m).  But here "the Court has already found that Plaintiff cannot assert a viable claim based on the allege deprivation of [medical care], and that finding would apply equally to a claim against [Smith].  Under these circumstances, it is appropriate for the Court to dismiss Plaintiff's claims as to [Smith] *sua sponte*."  *Brown v. Womack*, No. 16-CV-31, 2019 WL 4689166, at *7 (W.D.N.Y. Sept. 26, 2019) (collecting cases); *see McLennon v. New York City*, No. 13-CV-128, 2015 WL 1475819, at *3 n.9 (E.D.N.Y. Mar. 31, 2015) ("As the court's rulings herein would apply equally to the non-moving defendants in this case, the court dismisses plaintiffs' . . . claims for failure to state a claim as to the non-moving and unserved defendants *sua sponte*."); *Salvani v. ADVFN PLC*, 50 F. Supp. 3d 459, 463 n.2 (S.D.N.Y. 2014) ("[B]ecause Plaintiffs' claim against [the unserved] defendants suffer from the same deficiencies as against [the served defendant], the Court will treat the instant motion as if it were brought on behalf of all defendants."), *aff'd sub nom. Salvani v. InvestorsHub.com, Inc.*, 628 F. App'x 784 (2d Cir. 2015).

Accordingly, the claim against Smith is dismissed.

**D.    Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). "[I]t is within the sound discretion of the district court to grant or deny leave to amend." *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018) (cleaned up). "Leave to amend, though liberally granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments previously allowed'" or "'futility of amendment,'" among other reasons. *Ruotolo v. City of N.Y.*, 514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

Plaintiff has already amended his complaint, (*see* ECF No. 24), after having the benefit of a pre-motion letter from Defendants outlining the proposed grounds for dismissal, (ECF No. 19), and the discussion at the March 23, 2021 pre-motion conference, (Minute Entry dated Mar. 23, 2021). In general, a plaintiff's failure to fix deficiencies in the previous pleading, after being provided notice of them, is alone sufficient ground to deny leave to amend. *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first. Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories *seriatim*.") (cleaned up); *In re Eaton Vance Mut. Funds Fee Litig.*, 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading

defects"), *aff'd sub nom. Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.") (cleaned up).

Moreover, Plaintiff has not asked to amend again or otherwise suggested that he is in possession of facts that would cure the deficiencies identified in this opinion. Accordingly, the Court declines to grant leave to amend *sua sponte*. *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different result); *Horoshko v. Citibank, N.A.*, 373 F.3d 248, 249-50 (2d Cir. 2004) (*per curiam*) (district court did not abuse its discretion by not granting leave to amend where there was no indication as to what might have been added to make complaint viable and plaintiffs did not request leave to amend).

### IV.    **CONCLUSION**

For the foregoing reasons, Defendants' motion is GRANTED. The Clerk of Court is respectfully directed to send a copy of this Opinion and Order to Plaintiff, terminate the pending motion, (ECF No. 26), and close the case.

**SO ORDERED.**

Dated:  March 3, 2022
         White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.